

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ANNETTE CODY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

JILL ACQUISITION LLC, a Delaware entity, d/b/a WWW.JJILL.COM,

Defendant.

Case No.: 25-CV-937 TWR (KSC)

**ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION**

(ECF No. 14)

Presently before the Court is the Motion for Reconsideration of Order Denying Defendant's Motion to Compel Arbitration ("Mot.," ECF No. 14) filed by Defendant Jill Acquisition LLC, d/b/a www.jjill.com ("J.Jill"), as well as Plaintiff Annette Cody's Response in Opposition to ("Opp'n," ECF No. 15), Defendant's Reply in Support of ("Reply," ECF No. 16) the Motion. The Court vacated the hearing and took the Motion under submission without oral argument under Civil Local Rule 7.1(d)(1). (*See* ECF No. 19.) Having carefully considered the Parties' arguments, the record, and the applicable law, the Court **DENIES** Defendant's Motion.

**BACKGROUND**

On March 14, 2025, Plaintiff filed a Class Action Complaint for Violations of (1) California Business and Professions Code §§ 17501 *et seq.*; and (2) the Consumers

Legal Remedies Act, California Civil Code §§ 1750 *et seq.* in the Superior Court for the State of California, County of San Diego. (*See generally* ECF No. 1-3.) Defendant removed to this District on April 18, 2025, (*see generally* ECF No. 1), and Plaintiff filed the operative First Amended Class Action Complaint alleging the same causes of action as her original Complaint on April 21, 2025. (*See generally* ECF No. 2 ("FACAC").)

Plaintiff alleges that she purchased a "Rib Knit Two Way Poncho" at a misleadingly "discounted" price through Defendant's retail website, https://www.jjill.com/ (the "Website") on January 15, 2025. (*See id.* ¶ 10; *see also, e.g.*, *id.* ¶¶ 1, 9, 12–14.) As the last step in making her purchase, Plaintiff was taken to the following Order Review page:



(*See* ECF No. 5-2 ("Howard Decl.") ¶ 8; ECF No. 7-2 ("Ex. 1").) It was at this stage that Plaintiff submitted her order by clicking the "Place Order" button. (*See id.*) Directly above the "Place Order" button was this statement: "By clicking 'Place Order' you agree to J.Jill's **Terms of Use** & **Privacy Policy**." (*See id.*) The phrase "Term of Use" was a blue, underlined hyperlink.[1] (*See* Howard Decl. ¶ 8.)

Believing Plaintiff had agreed to a "Binding Arbitration Agreement and Class Action Waiver" appearing in its hyperlinked Terms of Use when she had clicked the "Place Order" button, Defendant moved to compel Plaintiff to arbitration on May 12, 2025. (*See generally* ECF No. 5.) The Court took the fully briefed motion under submission on the papers without oral argument and denied it. (*See generally* ECF No. 11 (the "Underlying Order").) In doing so, the Court noted that, under California law, Plaintiff could be found to have inquiry notice of Defendant's Terms of Use (and its included arbitration provision) "only if: (1) the website provide[d] reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer t[ook] some action, such as clicking a button or checking a box, that unambiguously manifest[ed] his or her assent to those terms." (*See* Underlying Order at 10–11 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)).) The first of these inquiries "ha[d] two aspects: the visual design of the webpages and the context of the transaction[,]" which "should be considered together." (*See id.* at 11 (quoting *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025)).)

With regard to the first aspect, the Court compared images from recent, binding Ninth Circuit cases finding specific notices sufficient, namely, *Keebaugh v. Warner Brothers Entertainment Inc.*, 100 F.4th 1005, 1020–21 (9th Cir. 2024); *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024); and *Oberstein v. Live Nation*

---

[1] "In the computing world, a hyperlink is a word, phrase, or image—typically underlined or in blue font—that the user can click on to jump to a new document or a new section within the current document." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 453 n.2 (2021).

*Entertainment, Inc.*, 60 F.4th 505, 516 (9th Cir. 2023), and insufficient, namely *Godun*, 135 F.4th at 712, and *Berman*, 30 F.4th at 856–57. (*See* Underlying Order at 12–19.) The Court concluded that, "*[o]n the whole*, the notice at issue here *more closely resemble[d]* those in *Oberstein*, *Patrick*, and *Keebaugh*," (*see* Underlying Order at 19 (emphasis added)), and that while "the design of the website alone *might* support concluding that the notice would be reasonably conspicuous," (*see id.* at 20 (emphasis added)), the Court was "required to consider . . . the full context of the transaction, . . . such as whether the type of transaction contemplate[d] entering into a continuing, forward-looking relationship' that would be governed by terms and conditions." (*See id.* (internal quotation marks omitted) (quoting *Godun*, 135 F.4th at 710).) Ultimately, the Court concluded that the context of Plaintiff's transaction with Defendant—a single purchase for which Plaintiff did not create an account and instead checked out as a "guest"—distinguished this case from those confronted by the Ninth Circuit in *Keebaugh* and *Oberstein*. (*See* Underlying Order at 20–21.) Consequently, "[v]iewing the evidence most favorably to Plaintiff in light of the context of the transaction and drawing all inferences in her favor, the Court conclude[d] that Defendant ha[d] failed to meet its burden of establishing that its notice was sufficiently conspicuous to bind Plaintiff to its Terms of Use, including the arbitration provision." (*See id.* at 21.)

Rather than file an appeal, *see* 9 U.S.C. § 16(a); *see also Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023), Defendant filed the instant Motion seeking reconsideration of the Court's Underlying Order on July 28, 2025. (*See generally* ECF No. 14.)

## LEGAL STANDARD

The decision to grant a motion for reconsideration is left to the "sound discretion" of the district court. *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000)). In this District, a party may apply for reconsideration "[w]henever any motion or any application or petition for any order or other relief has been made to any judge and has been refused in whole or in part." S.D. Cal. CivLR 7.1(a)(1); s*ee also Mogan v. Airbnb, Inc.*, No. 23-55489, 2024

WL 3738480 at *10 (9th Cir. 2024) (unpublished mem.). Under Civil Local Rule 7.1, the moving party must file for reconsideration within twenty-eight days after entry of the ruling and provide an affidavit setting forth, among other things, "new or different facts and circumstances" that did not exist at the time the previous motion was filed.[2] Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters.*, 229 F.3d at 890.

Reconsideration is appropriate only if the court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *Sch. Dist. No. 1J v. Ascends, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). A party seeking reconsideration may not raise new arguments or present new evidence if it could have reasonably done so earlier. *Kona Enters.*, 229 F.3d at 890 (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

## ANALYSIS

Defendant contends that the Court committed clear error in denying its motion to compel Plaintiff to arbitration for three reasons. (*See* Mot. at 7.) Before addressing each of Defendant's arguments, the Court first reviews decisions that have been issued by the California Court of Appeal and Ninth Circuit since the Underlying Order was issued.

### I. New Cases

There have been several new cases since the Underlying Order issued. The most persuasive of these, for which Plaintiff filed a Notice of Supplemental Authority, (*see* ECF No. 17), is the California Court of Appeal's decision in *Cruz v. Tapestry, Inc.*, 113 Cal. App. 5th 943, *as modified* (Aug. 27, 2025),[3] in which the court affirmed the trial court's

---

[2] Defendant has filed a declaration from P. Craig Cardon. (*See* ECF No. 14-1 ("Cardon Decl.").)

[3] Defendant objects to Plaintiff's Notice of Supplemental Authority on the grounds that it "directs the Court to the non-binding California Court of Appeal opinion" and "was filed without leave of Court, in violation of Section III.B.5 of Judge Robinson's Standing Order for Civil Cases." (*See* ECF No. 18 ("Obj.") at 2.) Although "[d]ecisions of [California's] six district appellate courts are persuasive but do

order denying a motion to compel arbitration concerning the appellee-plaintiff's purchases of a pick-up and delivery order using the following screens, respectively:




---

not bind each other or [the Ninth Circuit]," *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013) (citing *In re Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1278 (9th Cir. 2013)), the Ninth Circuit has indicated that it and its district courts "should nevertheless follow a published intermediate state court decision regarding California law unless [judges] are convinced that the California Supreme Court would reject it." *Id.* (citing *In re Watts*, 298 F.3d 1077, 1082–83 (9th Cir. 2002); *Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464–65 (9th Cir. 1983)). Because the Court is not convinced that the California Supreme Court would reject the Court of Appeal's decision in *Cruz*, the Court **OVERRULES** Defendant's Objection.

Payment

Your payment details are encrypted.

ADD A GIFT CARD +

Cards

PayPal

amazon pay

Klarna.

FINAL: PLACE ORDER ▸

Subtotal $89.00 $71.20

Standard Shipping FREE

Estimated Tax $4.72

Total $75.92

You will save $17.80 with this order

DIY Gift Wrap Kit

Add this to your bag to give your present that extra special Kate Spade touch!

Learn More

Our Stylists Are Here to Help

*See id.* at 915–20 & n.3; *see also id.* at 921–22 (Appendices A & B). As in this case, the user in *Cruz* purchased items from the retailers' website and later sued them for allegedly advertising falsely inflated percentage sales discounts.[4] *See id.* The Court of Appeal evaluated the transactional context "[b]efore assessing the visual elements of the two checkout pages . . . because it is key to determining the expectations of a typical consumer." *See id.* at 916 (internal quotation marks omitted) (quoting *B.D. v. Blizzard Entm't, Inc.*, 76 Cal. App. 5th 931, 947 (2022)). Although the appellants argued that the appellee may have anticipated some sort of terms, such as a return policy, given the size of the purchases ($79.00 for the first purchase and over $150.00 for the second), the Court of Appeal found that this was a "misapprehen[sion of] the nature of the inquiry" because "[a]n online purchase of merchandise does not necessarily give rise to a consumer expectation

---

[4] In fact, unlike in the instant case, the plaintiff in *Cruz* made two separate purchases on two separate dates—one for pickup, and a second for a delivery. *See Cruz*, 113 Cal. App. 5th at 910.

of an ongoing relationship governed by extensive contractual terms" and "it is not apparent that the dollar amounts of [the appellee]'s purchases placed her on notice that she was entering into an ongoing contractual relationship." *See id.* at 916–17.

As for visual aspects of the websites, the Court of Appeal noted "[a]s a preliminary matter" that the "appellants [had] fail[ed] to account for a critical aspect of each checkout page—the notice text is but one element in the left column of a two-column webpage[,]" which "increases the likelihood that a consumer would miss the notice text included in just one of the two columns." *See id.* at 918. Despite the fact that "the notice text is just below the action button . . . ; the notice text is capitalized; [and] the phrases 'TERMS OF USE' and 'PRIVACY POLICY' are underscored[,]" "other aspects of the notice text and the action button deemphasize the conspicuousness of the notice text." *See id.* (emphasis in original). Specifically, the notice text was comparatively smaller and more difficult to read than other text on the page, *see id.*, and was "less prominent than many other elements of the checkout pages, including the areas 'relating to entering credit card information, pricing information, offers about DIY gift wrap kits, and contact information for Kate Spade stylists." *See id.* Consequently, "[i]n light of the degree of clutter on the two-column checkout pages and the conspicuousness of the pages' other elements in relation to the notice text, . . . [the Court of Appeal] conclude[d] appellants [had] designed their checkout pages in a manner that 'dr[ew] the user's attention away' from the gray, difficult to read, notice text." *See id.* at 919 (final alteration in original) (quoting *Berman*, 30 F.4th at 857). Further, the Court of Appeal distinguished the Ninth Circuit's decision in *Patrick*, 93 F.4th 468, on the grounds that "the screenshot from the *Patrick* case does not indicate that the notice appeared on a two-column webpage, or that there were graphics or other visual elements that could draw a consumer's eyes away from the notice.'" *See id.* at 919–20.

Notably, the website at issue in *Cruz* is the most similar of the cases the Court has reviewed to Defendant's, including the "critical" two-column layout. What is more, the notice at issue in *Cruz* appeared in all capital letters, which is arguably more conspicuous than Defendant's, which does not.

The Ninth Circuit has also issued three new but unpublished memorandum decisions in the interim, two of which are relevant to the instant Motion.[5] In *Morrison v. Yippee Entertainment, Inc.*, No. 24-7235, 2025 WL 2389424 (9th Cir. Aug. 18, 2025), the Ninth Circuit reversed the district court's order denying the defendant's motion to compel arbitration in a case brought by a plaintiff alleging that the defendant had "unlawfully disclosed her personally identifiable information to a third party after she subscribed to [the defendant]'s streaming service," *see id.* at *1, through the following website:




---

[5] Although the Ninth Circuit affirmed the district court's denial of a motion to compel arbitration in *Plata v. Lands' End, Inc.*, No. 25-328, 2025 WL 2408818 (9th Cir. Aug. 20, 2025), that case has no bearing here because the Ninth Circuit found that the district court had "not clearly erred in finding that the hyperlink to the Terms of Use was broken at the time of [the plaintiff]'s purchase" meaning, "under California law, no mutual assent occurred, and the parties did not form a contract." *See id.* at *1.

*See Morrison v. Yippee Ent., Inc.*, 756 F. Supp. 3d 842, 848 (S.D. Cal. 2024), *rev'd and remanded*, 2025 WL 2389424. The Ninth Circuit first concluded that "[t]he district court [had] erred in concluding that [the defendant]'s webpage did not provide reasonably conspicuous notice" because "the hyperlink appeared in bright blue font against a clean white background that stood out from the surrounding text to indicate it was clickable[; t]he hyperlink was also located directly above the 'Start subscription' button . . . and alongside the statement that, '[b]y clicking below, you agree to our Terms of Service[;]'" and "[t]he format of [the defendant]'s webpage was also not so visually cluttered that it distracted from the hyperlink, and the placement of other hyperlinks or placement within a multi-line paragraph did not negate its conspicuousness." *See id.* (sixth alteration in original) (citing *Keebaugh*, 100 F.4th at 1020–21). The Ninth Circuit further reasoned that, as the district court itself had recognized, "[i]n addition to these visual features, the 'context of the transaction' further demonstrate[d] that the Terms were reasonably conspicuous" because "[a] reasonable user subscribing to [the defendant]'s recurring streaming service would have 'contemplate[d] some sort of continuing relationship' that prompted scrutiny of the website for any contractual obligation or terms." *See id.* at *2 (fifth alteration in original) (quoting *Oberstein*, 60 F.4th at 516). The Ninth Circuit therefore concluded that, "under the 'totality of the circumstances,' . . . [the defendant]'s notice was reasonably conspicuous." *See id.* Considering the difference in the context of the transaction, *Morrison* is clearly distinguishable from this case.

Similarly, in *Massel v. Successfulmatch.com*, No. 24-1870, 2025 WL 2452371 (9th Cir. Aug. 26, 2025), the Ninth Circuit reversed and remanded a district court's order denying a motion to compel arbitration involving the following website:

/ / /

/ / /

/ / /

/ / /

/ / /

CREATE AN ACCOUNT

Email Address

NO SUGAR DADDIES OR SUGAR BABIES

Consent to Our Service Agreement and Privacy Policy

A Service Agreement and a separate Privacy Policy govern the relationship between MillionaireMatch.com and all of its members. To become one of our members, you need to review and agree to the terms and conditions of both agreements and check the "Agree" box below. If you disagree, you will not be given access to the site.

☐ Agree to both the Service Agreement and the Privacy Policy

I'm not a robot reCAPTCHA Privacy - Terms

CONTINUE

Already a member? SIGN IN

MillionaireMatch PRIVACY SAFEGUARDER™

*See id.* at *1. Specifically, the Ninth Circuit found that "[t]he district court [had] erred in solely focusing on the color and design of the hyperlink in holding that [the defendant] did not provide reasonably conspicuous notice of the agreement and its arbitration provision." *See id.* Although the hyperlinks were merely underlined, "[t]he account creation screen was not 'crowded' with extraneous visuals, and the requirements to review and agree to the Service Agreement were in 'the natural flow of [the user's] actions.'" *See id.* (second alteration in original) (quoting *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1157 (9th Cir. 2025)). Further, the plaintiff had "created an account with [the defendant], and [had] shared his biometric information with th[e defendant's] dating service," and the Ninth Circuit "assume[d] that he, as 'a reasonable internet user[,] [would have been] more

vigilant in looking for contractual terms when the context of the transaction reasonably implie[d] a contractual relationship.'" *See id.* (fourth alteration in original) (quoting *Godun*, 135 F.4th at 709). Like the Ninth Circuit's recent decision in *Morrison*, *Massel* is distinguishable from the instant case because the plaintiff signed up for a service with the defendant that contemplated an ongoing relationship. Indeed, *Massel* is further distinguishable in that the visual aspects of the website are clearly much simpler, rendering the notice distinctly more conspicuous than Defendant's.

If anything, these new cases further support the conclusion the Court reached in the Underlying Order. The website in *Cruz* is incredibly similar to Defendant's Website in this case, including the "critical aspect" that the notice language appears in only one of two columns on the page. Further, the Ninth Circuit's decisions in *Morrison* and *Massel*, which reversed district courts' orders denying motions to compel arbitration, emphasized that the context of the transaction contemplated an ongoing contractual relationship, which the Court found not to be the case here.

## II. Defendant's Arguments

Turning to Defendant's specific arguments, Defendant contends that the Court committed clear error in denying its motion to compel Plaintiff to arbitration for three reasons: (1) the Underlying Order "conflicts with binding Ninth Circuit precedent[,]" (2) the Underlying Order "misapplies authority from the California Court of Appeal and the Ninth Circuit to improperly create a bright-line rule that no contract is formed when there is a single online purchase[,]" and (3) the Underlying Order "establishes a dangerous precedent that would conflict with an entire body of caselaw compelling arbitration of claims based on single-purchase transactions." (*See* Mot. at 7.) The Court addresses each of these arguments in turn.

### *A. Conflict with Binding Ninth Circuit Precedent*

Defendant contends that the Underlying Order "conflicts with the Ninth Circuit's decision in *Patrick v. Running Warehouse*" because the Ninth Circuit compelled to arbitration all seven of the plaintiffs, only two of whom created accounts with the website.

(*See* Mot. at 9–10.) Specifically, the Ninth Circuit noted that, "***[r]egardless of whether a consumer cho[se] to create an account***, he or she [had to] confirm the order by clicking a final button to 'Place Order' or 'Submit Order[,' and i]mmediately adjacent to this final button on each website [wa]s the following statement: 'By submitting your order you . . . agree to our privacy policy and terms of use.'" (*See id.* (emphasis and first and last alterations in original) (quoting *Patrick*, 93 F.4th at 474).)

First, the Court reemphasizes that, in determining whether a notice is sufficiently conspicuous, the court is "actually conducting . . . a fact-intensive inquiry" for which "the criteria are largely subjective." *See Sellers*, 73 Cal. App. 5th at 473 (citations omitted). Consequently, "there naturally may be different views," and "the inquiry invariably lends itself to a more subjective than objective analysis and, as a result, some courts have reached seemingly inconsistent results." *See id.* That the Underlying Order found that, "*[o]n the whole*, the notice at issue here *more closely* resembles those in *Oberstein*, *Patrick*, and *Keebaugh*," (*see* Underlying Order at 19 (emphasis added)), does not mean that the Court concluded that the notice at issue in this case was as conspicuous as the one the Ninth Circuit analyzed in *Patrick* based on the visual aspects of the website. Indeed, there are two versions (a desktop and a mobile version) of the website shown in *Patrick*, *see Chabolla*, 129 F.4th at 1165 (Bybee, J., dissenting), both of which are considerably smaller and less cluttered than Defendant's, rendering the notices more conspicuous.

Further, as Plaintiff notes, (*see* Opp'n at 17), *Patrick* does not explicitly discuss, let alone mention, the context of the transaction. Although the Court agrees with Defendant that "[t]his court must presume that the [Ninth] Circuit [in *Patrick*] was aware of relevant precedent in this [C]ircuit,' . . . and that it applied that precedent accordingly," (*see* Reply at 2 (quoting *Boyer v. United States*, 84 Fed. Cl. 751 756 (2008))), that the notice in *Patrick* was sufficiently conspicuous "regardless of whether a consumer cho[se] to create an account," *see* 93 F.4th at 474, does not mean that *any* notice—including the one at issue here—will be sufficiently conspicuous regardless of the context of the transaction.

/ / /

In short, Defendant's reading of *Patrick* is as erroneous as the one Defendant ascribes to the Court's Underlying Order. "[W]ebsites inviting one-off transactions will be held to higher standards than those proposing continuing associations," *see Berman*, 30 F.4th at 867 (Baker, J., concurring) (quoting *Sellers*, 73 Cal. App. 5th at 481), and those standards are fact-intensive and subjective. *See Sellers*, 73 Cal. App. 5th at 473. While the conspicuousness of the notice in *Patrick* may have been sufficient even where certain consumers engaged in one-time purchases without creating accounts does not mean that the less-conspicuous notice here is necessarily sufficient in that same context, and *Patrick* does not foreclose this Court's conclusion upon conducting the requisite fact-intensive and subjective assessment in this case.

***B. Creation of a Bright-Line Rule***

Defendant next argues that the Underlying Order "misapplies [*Sellers*, *Godun*, *Keebaugh*, and *Chabolla*], creating from them a bright-line rule that a single-purchase transaction precludes a finding of otherwise sufficient notice." (*See* Mot. at 11.) As an initial matter, the Underlying Order did not create a bright-line rule—the Court merely concluded that, given the context of the transaction in this case, the specific notice on Defendant's Website was not sufficiently conspicuous. (*See* Underlying Order at 20–21 ("This context distinguishes this case from those in which the Ninth Circuit has found that the context of the transaction would put a user on inquiry notice that use of a company's website or services constituted an agreement to its terms and conditions, including an arbitration provision[, including *Keebaugh* and *Oberstein*]."[6]).) The Court merely decided that "[t]he context of the transaction . . . weigh[ed] against concluding that Plaintiff was sufficiently aware that, by placing an order through jjill.com, she would be entering into an agreement including an arbitration provision," (*see id.* at 21), not that *all cases* in which

6 The Court specifically excluded from this list the Ninth Circuit's decision in *Patrick*, in which—as discussed above, *see supra* page 13—the Ninth Circuit did *not* explicitly discuss or consider the context of the transaction.

a plaintiff purchases a single item without creating an account provides insufficient notice, irrespective of the visual design of the website.

Turning to Defendant's specific arguments, Defendant first contends that *Sellers* was decided in—and consequently is limited to—the context of California's Automatic Renewal Law, Cal. Bus. & Prof. Code §§ 17600–17606. (*See* Mot. at 11–12.) The California Court of Appeal's recent decision in *Cruz*, however—which applies *Sellers* in the same context that the Underlying Order did in this case, *see Cruz*, 113 Cal. App. 5th at 910–11, 916–17—proves that Defendant reads *Sellers* far too narrowly.

Defendant also argues that "Ninth Circuit authority applying *Sellers* has interpreted the context of the transaction as a 'non-dispositive factor' in the court's analysis, rather than a mandatory element," meaning "the denial of J.Jill's Motion ***solely*** on the fact that Plaintiff did not create an account with J.Jill and checked out as a guest . . . misinterpreted Ninth Circuit authority on the issue." (*See* Mot. at 13–14 (emphasis in original) (citing *Keebaugh*, 100 F.4th at 1019).) Again, the Court did not deny Defendant's motion to compel arbitration *solely* based on the fact that Plaintiff did not create an account with Defendant and checked out as a guest; rather, the Court weighed the visual aspects of Defendant's notice against the context of the transaction, (*see* Underlying Order at 19–21), as the Ninth Circuit emphasized was necessary under California law in *Keebaugh*. *See* 100 F.4th at 1018–19 (concluding that district court had erred in "focus[ing] *almost exclusively* on whether 'the context of the transaction' put the Plaintiffs on notice" because "[c]ourts must still evaluate the visual aspects of the notice under the two-part test [the Ninth Circuit] articulated in *Berman*" (emphasis added) (first citing *Oberstein*, 60 F.4th at 516; then citing *Patrick*, 93 F.4th at 477)). Here, the Court correctly considered "the transactional context [a]s 'an important *factor* to consider and . . . key to determining the expectations of a typical consumer[,]" *see id.* at 1019 (emphasis in original) (quoting *Blizzard Entm't*, 76 Cal. App. 5th at 61), not as wholly dispositive of the inquiry.

/ / /

/ / /

***C. "Dangerous Precedent"***

Finally, citing a number of unpublished district court decisions, Defendant argues that the Underlying Order "is contrary to that of numerous other courts, which have compelled arbitration of claims based on single-purchase transactions," (*see* Mot. at 14–15 (collecting cases)), and that, "[i]f left unchanged, the Order would stand in stark contrast to the long list of cases compelling arbitration of claims based on transactions with contexts identical to the one at issue here." (*See id.* at 15.)

As an initial matter, the Underlying Order obviously is not binding on any other court. Further, the Court again reemphasizes that whether a notice provides sufficiently conspicuous notice "is a fact-intensive inquiry" for which "the criteria are largely subjective." *See Sellers*, 73 Cal. App. 5th at 473. Consequently, to the extent Defendant contends that their "long list of cases" were decided in "contexts identical to the one at issue here," (*see* Mot. at 15 (emphasis added)), the Court disagrees—even if all of those cases involved single underlying transactions, the visual aspects of the notices certainly are not "identical." Indeed, first and most importantly, only two of Defendant's cases were decided after the California Court of Appeal issued its decision in *Sellers* on December 30, 2021—which first introduced the requirement that courts applying California law consider the context of the transaction—and the Ninth Circuit first ratified that requirement in *Oberstein* on February 13, 2023.[7] The Court therefore disregards *In re Stubhub Refund Litigation*, No. 20-MD-02951-HSG, 2021 WL 5447006 (N.D. Cal. Nov. 22, 2021); *Smorowski v. Domino's Pizza LLC*, No. CV-20-10739-MWF-SKX, 2021 WL 4440167 (C.D. Cal. July 23, 2021); and *Roberts v. Obelisk, Inc.*, No. 18CV2898-LAB (BGS), 2019 WL 1902605 (S.D. Cal. Apr. 29, 2019), none of which considered the context of the transaction, as is now required under California law and Ninth Circuit precedent applying

---

[7] Although Judge Baker addressed *Sellers* at length in his concurrence in *Berman*, *see* 30 F.4th at 861–70 (Baker, J., concurring), a three-judge panel of the Ninth Circuit did not address *Sellers* in a published decision until *Oberstein*.

California law. Further, *Karim v. Best Buy Co.*, No. 22-CV-04909-JST, 2023 WL 3801909 (N.D. Cal. June 2, 2023), does not contain an image of the website at issue that the Court can compare to Defendant's. If the Court were able to compare the two images, it might be evident, for example, that the notice text was comparably larger and, therefore, more conspicuous in relation to the other elements of the website's design. Because the Court is unable to compare the visual elements of the websites, *Karim*'s relevance is limited. Finally, unlike in this case, the website at issue in *Hong v. StubHub, Inc.*, No. 2:24-CV-03318-SB-JC, 2024 WL 4720924 (C.D. Cal. Sept. 9, 2024), had *two* "Buy Now" buttons, "both with the same notice about the terms and conditions immediately above it[.]" *See id.* at *3. Two notices are unquestionably more conspicuous than the one that appeared on Defendant's Website.

Given that individual cases necessarily analyze different websites, applying subjective factors to varying facts, it is neither unexpected nor problematic that courts may conclude that certain websites—despite occurring within similar contexts of consumers making single purchases—may provide sufficiently conspicuous notices while others do not. Indeed, Judge Baker warned in his concurrence in *Berman*:

> Given the present state of California law, website designers who knowingly choose sign-in wrap—to say nothing of browsewrap—over clickwrap and scrollwrap designs practically invite litigation over the enforceability of their sites' terms and conditions, as the fact-intensive inquiry over what "makes a given textual notice sufficiently conspicuous . . . invariably lends itself to a more subjective than objective analysis . . . . "

30 F.4th at 868 (Baker, J., concurring) (quoting *Sellers*, 73 Cal. App. 5th at 473); *see also, e.g.*, *Oberstein*, 60 F.4th at 517 ("To ensure that an online agreement passes muster, clickwrap is the safest choice."). As the Court noted in the Underlying Order, (*see id.* at 21), "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers." *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014). Consequently, if Defendant desires a litigation-proof arbitration clause, it is free to implement a more conspicuous alternative design.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion (ECF No. 14) seeking reconsideration of the Court's June 30, 2025 Order (ECF No. 11) denying Defendant's motion to compel Plaintiff to arbitration (ECF No. 5). If anything, the California Court of Appeal's intervening decision in *Cruz*, 2025 WL 2462710, reinforces that Court's conclusion in the Underlying Order that the visual aspects of the notice appearing on Defendant's website, when viewed in the context of Plaintiff's transaction, were insufficiently conspicuous to bind her to arbitration. Accordingly, Defendants **SHALL RESPOND** to Plaintiff's First Amended Class Action Complaint within thirty (30) days of the electronic docketing of this Order.

**IT IS SO ORDERED.**

Dated: September 30, 2025

Honorable Todd W. Robinson
United States District Judge